**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**GARY CLEVELAND QUILLING,**

      **Petitioner,**

**v.**                                         **Case No. 8:14-cv-1467-T-36TGW**

**SECRETARY, DEPARTMENT**
**OF CORRECTIONS,**

      **Respondent.**

                                                      /

## <u>ORDER</u>

Gary Cleveland Quilling ("Quilling"), a now-counseled Florida prisoner, initiated this action with a *pro se* petition for writ of habeas corpus under 28 U.S.C. Section 2254. (Doc. 1)  He challenges his convictions for robbery with a deadly weapon and aggravated assault with a deadly weapon.[1]  His convictions were entered by the Circuit Court for the Fifth Judicial Circuit for Hernando County, Florida. The Respondent filed a response and supporting exhibits. (Docs. 6, 7)  Quilling filed a *pro se* reply, a *pro se* response to the Respondent's request in its response for the Court to dismiss his petition as untimely, and a *pro se* supplement to his reply.  (Docs. 11, 13, 16)  Quilling's counsel filed an appearance on his behalf on March 27, 2017. (Doc. 21)  Upon review, the petition must be dismissed as untimely.

---

[1] Quilling filed a *pro* se motion for leave to amend his petition, requesting leave to file a typed version with no new claims.  His motion was denied as unnecessary. (Docs. 5, 8)

# I.  PROCEDURAL HISTORY

Quilling was found guilty after a jury trial of robbery with a deadly weapon and aggravated assault with a deadly weapon.  He was sentenced as a violent career criminal to life imprisonment for the robbery, and a concurrent term of 15 years with a ten-year mandatory minimum prison term for the aggravated assault.  On July 19, 2005, the state appellate court *per curiam* affirmed.  *Quilling v. State*, 907 So. 2d 1179 (Fla. 5th DCA 2005) [table].  On August 3, 2005, Quilling filed a timely *pro se* motion for rehearing and request for a written opinion, which was pending when the mandate issued two days later on August 5, 2005.[2] (Doc. 7-2 at 17; 7-3 at 73 to 79)  The motion for rehearing was denied on August 18, 2005. (Ex. C 98; Doc. 7-3 at 80)  Over 10 months later, Quilling filed a *pro se* amended motion for rehearing on July 3, 2006.  His amended motion was denied on July 19, 2006. (Exs. C 99, 110; Doc. 7-3 at 81 to 83; 7-4 at 6)

By then, Quilling had filed on May 22, 2006, a *pro se* motion to correct illegal sentence pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure. (Ex. D 1; 7-4 at 8 to 10)  His motion was denied, and his motion for rehearing was denied.  On October 27, 2006, the state appellate court affirmed with written opinion.  *Quilling v. State*, 940 So. 2d 548 (Fla. 5th DCA 2006).  Quilling filed a motion for rehearing, which was denied on November 29, 2006, after the mandate issued on November 15, 2006. (Exs. D 47, 50, 51; Doc. 7-14 at 54 to 58)

---

[2] Unless stated otherwise, the dates of Quilling's *pro se* filings in state court and this action are the dates he delivered his pleadings to prison officials for mailing.  *See Houston v. Lack*, 487 U.S. 266, 276 (1988).  Quilling's August 3, 2005, rehearing motion, was docketed as filed in the state appellate court on August 8, 2005. (Ex. B 2, case docket, 2D04-2530; Doc. 7-2 at 17)

On January 11, 2007, Quilling filed a *pro se* handwritten 379-page motion for postconviction relief with numerous pages of attachments and exhibits.[3] (Ex. E 1-379; Doc. 7-4 at 60 et seq. to 7-11 at 2) He filed a handwritten amendment to his postconviction motion and additional exhibits and attachments. He also filed an eight-page supplement. The trial court dismissed Mr. Quilling's motions and supplements without prejudice to his filing an amended motion not to exceed fifty pages.[4] (7-11 at 4 to 7) Quilling filed an amended postconviction motion consisting of 50 pages on July 18, 2007. (G 1-50; Doc. 7-11 at 37 to 86) He also filed a July 27, 2007 supplemental rule 3.850 motion and several motions to compel/public records requests. *See Quilling v. State*, 990 So. 2d 1133, 1135 (Fla. 5th DCA 2008) (discussing Quilling's pleadings and withholding writ of mandamus). A number of Quilling's grounds in his amended Rule 3.850 motion were summarily denied. The remaining grounds were denied after an evidentiary hearing. On July 25, 2012, Quilling's appeal of the denial of his amended postconviction motion was dismissed for his failure to file an initial brief. (Exs. G 145, 146; Doc. 7-13 at 9) Rehearing was denied on August 29, 2012.[5] (Exs. G 147, 153; Doc. 7-13 at 16)

---

[3] This postconviction motion provided no indicia of when it was delivered to prison officials for mailing.

[4] Quilling pursued an appeal. On October 19, 2007, the state appellate court dismissed the appeal for lack of jurisdiction. *Quilling v. State*, 968 So. 2d 1034 (Fla. 5th DCA 2007). Quilling filed a rehearing motion, which was denied, and the mandate issued on December 17, 2007. (Doc. 7-2 at 21)

[5] The Respondent states that from January 11, 2007 to August 29, 2012, Quilling filed a number of pleadings in the state appellate court and Florida Supreme Court. (Doc. 6 at 3) Such included a *pro se* petition alleging his appellate counsel rendered ineffective assistance on direct appeal filed on August 3, 2007, and a supplemental petition, which were both denied on May 6, 2008. *Quilling v. State*, Case No. 5D07-2693. Rehearing was denied on June 11, 2007. Quilling also filed a *pro se* all writs petition, which was dismissed by the Florida Supreme Court for lack of jurisdiction on April 20, 2012. *Quilling v State*, 90 So. 3d 272 (Fla. 2012).

On September 6, 2012, Quilling filed a *pro se* motion seeking DNA testing under Rule 3.853 of the Florida Rules of Criminal Procedure. (Ex. H 1 to 8; Doc. 7-13 at 18 to 23)  The motion was denied, and Quilling's motion for rehearing was denied. (Exs. H 9 to 11, H 18 to 20; Doc. 7-13 at 26 to 28, 35 to 37).   The state appellate court *per curiam* affirmed without written opinion.  *Quilling v. State*, 110 So. 3d 907 (Fla. 5th DCA 2013) [table].  After denial of rehearing, the mandate issued on May 8, 2013. (Exs. D 51, 52; Doc. 7-14 at 1 to 2)

On April 29, 2013, Quilling filed another *pro se* Rule 3.850 motion, which was denied as untimely and successive. (Exs. I 1 to 11; Doc. 7-14 at 4 to 14)  His motion for rehearing was denied. (Exs. I 12 to 14; Doc. 7-14 at 15 to 17)  On December 23, 2013, the state appellate court *per curiam* affirmed without written opinion.  *Quilling v. State*, 146 So. 3d 53 (Fla. 5th DCA 2013) [table].  After rehearing was denied, the mandate issued on February 17, 2014. (Ex. I 31; Doc. 7-14 at 33 to 34)

## II.  UNTIMELINESS OF PETITION

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations for a state prisoner to file a § 2254 petition for a writ of habeas corpus, which begins to run under Section 2244(d)(1)(A) on the date the prisoner's state judgment becomes final.  The limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . " 28 U.S.C. § 2244(d)(2).

To determine whether the federal habeas petition was timely filed within one year after the conviction became final, the Court must first determine when Quilling's judgment became final.  The judgment becomes final for purposes of Section 2244(d)(1)(A) when

the 90-day period for seeking certiorari review expires. *See Williams v. Sec'y, Fla. Dep't of Corr.*, --- Fed. Appx. ----, 2017 WL 443636, at *1 (11th Cir. Feb. 2, 2017) ("After the final state court of appeals rules on a § 2254 petitioner's conviction, the one-year limitations period does not begin to run until the 90-day window to petition the United States Supreme Court for a writ of certiorari expires.") (citing *Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002)).[6] Direct review cannot conclude for purposes of Section 2244(d)(1)(A) until the availability of direct appeal to the state courts and to the Supreme Court has been exhausted. *Jimenez v. Quarterman*, 555 U.S. 113, 119–20 (2009).

### A. Quilling's judgment became final under 28 U.S.C. § 2244(d)(1)(A) when the period for petitioning for certiorari expired following denial of his motion for rehearing of the affirmance on direct appeal.

Quilling asserts, and the Respondent does not dispute, that Quilling's August 3, 2005, rehearing motion of the affirmance on direct appeal was timely filed within the 15-day period for filing a motion for rehearing, Fla. R .App. P. 9.330(a). The parties disagree, however, on the import of the denial of this rehearing motion on August 18, 2005. The Respondent asserts that Quilling's judgment became final 90 days after the August 18, 2005, denial of his motion for rehearing. (Doc. 6 at 5, 6) Quilling has a number of arguments, which share a core assertion: that direct review has not concluded.

Quilling contends in his *pro se* reply that the mandate issued prematurely and that direct review has remained pending because no mandate issued after the August 18, 2015, denial of his timely motion for rehearing. (Doc. 11 at 3) In his brief in opposition to the Respondent's motion to dismiss the petition, Quilling asserts that under Rule 9.340 of

---

[6] *See also, Cadet v. Fla. Dep't of Corr.*, --- F.3d ----, 2017 WL 727547, at *1 (11th Cir. Feb. 24, 2017) ("His convictions were affirmed on direct appeal. . . .The judgment of conviction became final 90 days later, on December 23, 2002, when the time for seeking a writ of certiorari from the United States Supreme Court expired.").

the Florida Rules of Appellate Procedure, a decision becomes final when the state appellate court issues the mandate, and he relies on his assertions in his July 3, 2006, amended motion for rehearing, in which he claimed that he did not receive the mandate until he received it on request. (Doc. 13 at 4)  In his amended rehearing motion, Quilling asserted that the state court had treated his motion for rehearing as untimely by stating that it was filed on August 8, 2005, and he moved the state court to withdraw the August 5, 2005, mandate and rule on his July 3, 2006, amended motion for rehearing. (Doc. 73- at 81 to 83)  Quilling's amended rehearing motion was denied without elaboration on July 19, 2006. (Doc. 7-4 at 6)  Citing state decisional law that a mandate could be withdrawn outside the term of court where a mandate was improvidently issued on the erroneous conclusion that no timely motion had been filed, Quilling claims that the state appellate court erred "as a matter of law" in failing to: withdraw its mandate, rule on the timely rehearing motion, and then issue its mandate. (Doc. 13 at 3 to 5)  By not following this procedure, Quilling claims, the state appellate court never lost jurisdiction over the direct appeal and direct review never concluded. (Doc. 13 at 5)

In a *pro se* supplement, Quilling makes an additional argument.  According to Quilling, the August 18, 2005, denial of his timely August 3, 2005, motion for rehearing is a nullity because mandate issued after he constructively filed his motion for rehearing and before denial thereof. (Doc. 16 at 1)

The entry of judgment, and not the issuance of the mandate, is the event that starts the running of time for seeking Supreme Court review.  *Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1275 (11th Cir. 2006) ("If Rule 13.1 is unclear about when the 90-day period begins to run, Rule 13.3 leaves no doubt.  It specifies that "[t]he time to file a

petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice)." *Id.* at 13.3."). If a petition for rehearing is timely filed in the lower court by any party, or if the lower court appropriately entertains an untimely petition for rehearing or *sua sponte* considers rehearing, the time to file the petition for writ of certiorari for all parties runs from the date of the denial of rehearing or, if rehearing is granted, the subsequent entry of judgment. Sup. Ct. R. 13.3.

The order denying Quilling's rehearing motion referred to it as filed on August 8, 2005, the date that it was docketed. Nevertheless, the reference to the docketing date does not establish that the state appellate court declined to entertain the rehearing motion. Given that his rehearing motion was timely and the state court's order did not state that the motion was untimely, his time for seeking certiorari review ran from the denial thereof under Rule 13.

Quilling in his *pro se* supplement asserts that Rule 13 contemplates denial of a "legal order denying rehearing." (Doc. 16 at 3) Generally, a Florida court should recall its mandate if it receives a timely motion for rehearing after the mandate issued. *See Rasley v. McNeil,* 2010 WL 503080, at *5, n. 7 (N.D. Fla. Feb. 8, 2010) (unpublished) (citing *Robbins v. State*, 992 So. 2d 878, 879-80 (Fla. 5th DCA 2008), and *Plucinik v. State*, 885 So. 2d 478 (Fla. 5th DCA 2004)). Nevertheless, Quilling fails to show that the August 18, 2005, denial of his timely motion for rehearing was a "nullity" or an "unlawful" order for purposes of starting his time for petitioning the Supreme Court for certiorari review. When the state appellate court denied Quilling's amended motion for rehearing, the state court did not hold that the denial of Quilling's August 3, 2005, motion for rehearing was a nullity.

Nor did the state court hold that his motion for rehearing was still pending when Quilling filed his amended motion for rehearing. There was no pending rehearing motion to amend, and the state court did not re-open direct review. Accordingly, his judgment was final on November 16, 2005, when the 90-day window closed for petitioning the Supreme Court for review following the August 18, 2005, denial of Quilling's motion for rehearing. *See Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002) (holding the petitioner's conviction became final 90 days after the Supreme Court of Florida denied his motion for rehearing). *See also e.g.*, *Hollinger v. Sec'y, Dep't of Corr.*, 334 Fed. App'x. 302, 303 (11th Cir. 2009) (petitioner's conviction became final ninety days after rehearing on direct appeal was denied). Quilling's AEDPA limitations period began running on November 17, 2005, and using the anniversary period, it would have expired on November 17, 2006, absent statutory tolling.[7]

Upon commencement of his limitations period, a period of 186 days ran which was not tolled until Quilling filed his *pro se* Rule 3.800(a) motion on May 22, 2006.[8] (Doc. 7-4 at 8 to 10) The parties disagree on how long the Rule 3.800 motion, "properly filed" for tolling purposes, was pending. The Respondent applies statutory tolling until the mandate issued in his appeal of the Rule 3.800(a) denial on November 15, 2006. (Doc. 6 at 6) The

---

[7] *See San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011) ("[D]irect review of Petitioner's conviction concluded on October 5, 1998. . . . Petitioner had until Wednesday, October 6, 1999 to file this petition.").

[8] The Respondent asserts that Quilling's amended motion for rehearing filed July 3, 2006, and denied July 19, 2006, in his direct appeal did not toll his one-year limitations period because it was untimely filed. (Doc. 6 at n. 6) The Court need not determine whether the amended motion for rehearing, in which he sought to reopen the direct appeal, was "properly filed" and constitutes an application for State post-conviction or other collateral review under the tolling statute. *Cf.*, *Danny v. Sec'y, Fla. Dep't of Corr.*, 811 F.3d 1301 (11th Cir. 2016) (holding that a petition for a belated direct appeal filed under Fla. R. App. P. 9.141(c) does not qualify as an "application for State ... collateral review" under Section 2244(d)(2) and does not toll the limitations period). Assuming that Quilling's amended motion for rehearing qualified as an application for State post-conviction or other collateral review, and is "properly filed" under the tolling statute, it had no practical tolling effect because it was filed and denied when Quilling's Rule 3.800(a) motion was pending.

Respondent asserts that Quilling's November 13, 2006, motion for rehearing was filed outside the 15-day period for rehearing of the October 27, 2006, decision, but even using the date of denial of rehearing, the federal petition is time-barred. (*Id.*, n.7)

Quilling asserts that his motion for rehearing filed on November 13, 2006, before the mandate issued was timely because he was entitled to an additional five days to file his rehearing motion under Rule 9.420(e) of the Florida Rules of Appellate Procedure. (Doc. 13 at 6)  The automatic five-day extension does not, however, apply when the act was required to be done after rendition or filing of an order, even if the rendered order was mailed to the parties.  *Gillespie v. City of Destin*, 946 So. 2d 1195 (Fla. 1st DCA 2006).  Nonetheless, Quilling's motion for rehearing was timely, as the last day for seeking rehearing fell on Saturday, November 11, 2006, and he constructively filed his rehearing motion on Monday, November 13, 2006.[9]

In *Nyland v. Moore*, the Eleventh Circuit held that in Florida, a state court of appeals' order denying a rehearing on its affirmance of the state trial court's denial of a motion for postconviction relief is pending until the mandate issues.  216 F.3d 1264, 1267 (11th Cir. 2000) (citing *Hodges v. State*, 709 So.2d 620, 621 (Fla. 1st DCA 1998).  The Court concluded that the district court erred in failing to find that Nyland's postconviction motions were pending until the mandates issued.  216 F.3d at 1267.  The circumstances of Quilling's case are distinguishable from *Nyland* in which the mandate issued after the state appellate court rendered its order denying Nyland's motion for rehearing.  In

---

[9] *See Gillespie*, 946 So. 2d at 1197, n.1 (applying Fla. R. App. P. 9.420(f) (2005) ("In computing any period of time prescribed ... by order of the court, ... the day of the act [or] event ... from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included unless it is a Saturday, a Sunday, or a holiday ..., in which event, the period shall run until the end of the next day that is neither a Saturday, Sunday, nor holiday.")).

Quilling's case, the mandate issued before the state appellate court denied his motion for rehearing. Quilling asserts that the issuance of the mandate in his appeal of the Rule 3.800(a) denial was premature and because a mandate did not issue after denial of rehearing, his one-year limitations period has continued to be tolled. (Doc. 11 at 4) Quilling, however, fails to show that the appeal of the Rule 3.800 denial remains pending. The state appellate court did not recall the November 15, 2006, mandate (Doc. 7-4 at 57), and at most, Quilling is entitled to statutory tolling only until the denial of rehearing on November 29, 2006. (Doc. 7-4 at 58) *See Rasley*, 2010 WL 503080, at *6 (holding that even if petitioner's Rule 3.850 motion was pending only until issuance of the mandate, the federal deadline was tolled while her motion for rehearing was pending in the state appellate court).

An untolled period of 42 days passed until Quilling on January 11, 2007, filed a voluminous *pro se* motion for postconviction relief (Ex. E 1-379), which was dismissed without prejudice to his filing an amended motion not exceeding 50 pages. (Doc. 1 7-11 at 4 to 7) The Respondent asserts that while there is an argument that the initial Rule 3.850 motion and his appeal from the dismissal of his motion were not "properly filed" and did not toll his limitations period, the federal petition is time-barred even if his January 11, 2007, Rule 3.850 motion tolled his limitations period. (Doc. 6 at 6) In *Price v. Sec'y, Dep't of Corr.*, 489 Fed. Appx. 354, 355 (11th Cir. 2012), the Court held that the prisoner's 250-page Rule 3.850 motion, which did not comply with the Rule's requirement that the motion include "a brief statement of the facts," was not "properly filed" for purposes of Section 2244(d)(2). The postconviction court in dismissing Quilling's postconviction motion set forth state law addressing the brief statement requirement of Rule 3.850. (Doc. 7-11 at 4

to 6)  However, it need not be decided whether Quilling's postconviction motion is "properly filed," because assuming it was and that the federal limitations period was tolled during the pendency of the postconviction motion, the Section 2254 petition would still be untimely.

Quilling's appeal of the dismissal of his initial postconviction motion was pending until December 17, 2007, when mandate issued in his appeal of the dismissal order. (Ex. F 32; 7-11 at 35)  By then, he had filed on July 18, 2007, a *pro se* amended motion for postconviction relief, "properly filed" under the tolling statute. (Doc. 7-11 at 37 to 86)  The Respondent asserts that the amended Rule 3.850 motion was pending until August 29 2012, when the state court denied his motion for rehearing of the dismissal of his postconviction appeal of the denial of his amended postconviction motion. (Ex. G; Doc. 7-13 at 16)  Quilling asserts that the appeal remains pending as no mandate issued. (Doc. 11 at 5)  The state appellate court did not issue a mandate in the appeal.  Nevertheless, such does not require the conclusion that his amended postconviction motion is still "pending" in the state court within the meaning of Section 2244(d)(2).

In general, the mandate functions to end the jurisdiction of the appellate court and to return full jurisdiction of the case to the trial court.  *State v. Miyasato*, 805 So. 2d 818, 824 (Fla. 2nd DCA 2001).  Rule 9.340(a) of the Florida Rules of Procedure provides that "[u]nless otherwise ordered by the court or provided by these rules, the clerk shall issue such mandate or process as may be directed by the court after expiration of 15 days from the date of an order or decision."  Fla. R. App. P. 9.340(a).  It is not clear whether the state court dispensed with a mandate because Quilling's appeal was dismissed for his failure to file an initial brief. (Doc. 7-13 at 9)  *Cf. Cabrera v. State*, 721 So. 2d 1190, 1191

(Fla. 2nd DCA 1998), (no mandate issued because state appellate court granted request to voluntarily dismiss appeal).  The state court appellate docket has an entry for "notice memorandum" on August 29, 2012, the date that his rehearing motion was denied. (Doc. 7-2 at 29)  It appears that the state trial clerk was provided this document, as the state trial docket shows an entry on September 4, 2012, for "memo/order from DAC re: dismissal of appeal." (Doc. 7-1 at 8)  Quilling acknowledges that he received the order denying his motion for rehearing but states that he did not receive a copy of the "notice memorandum." (Doc. 11 at 5)  He does not, however, claim that entry and service of such was required by state appellate rules of procedures, and any oversight or noncompliance with state procedures for issuing a mandate would not preclude the conclusion that Quilling's amended postconviction motion was no longer "pending" within the meaning of the tolling statute when the state appellate court denied rehearing.

"After the State's highest court has issued its mandate or denied review, no other state avenues for relief remain open.  And an application for state postconviction review no longer exists."  *Lawrence v. Florida*, 549 U.S. 327, 332 (2007).  In *Lawrence*, the parties agreed that AEDPA's limitations period was tolled from the filing of Lawrence's petition for state postconviction relief until the Florida Supreme Court issued its mandate affirming the denial of that petition." 549 U.S. at 331.  In Quilling's case, notwithstanding that a mandate did not issue, review came to an end when rehearing was denied of the dismissal of his appeal.  Jurisdiction did not lie for further review of the dismissal of his appeal by the Florida Supreme Court,[10] and Quilling's amended postconviction motion

_____

[10] *See Wells v. State,* 132 So. 3d 1110, 1113 (Fla. 2014) (Florida Supreme Court does not have jurisdiction over unelaborated *per curiam* dismissal issued by a state district court without opinion or explanation or that merely cites to a case not pending review in, or reversed or quashed by, the Florida Supreme Court, or to a state statute or rule of procedure).

was no longer "pending" for purposes of Section 2244(d)(2) once rehearing in his postconviction appeal was denied on August 29, 2012. (Doc. 7-13 at 16)

At that juncture, 228 days had passed on Quilling's federal limitations period. Thereafter, he did not have pending a "properly filed" application for State post-conviction or other collateral review, and his one-year limitations period expired on Monday, January 14, 2013. Thus, the instant petition filed on June 11, 2014, is untimely filed. (Doc. 1)

On September 6, 2012, Quilling filed a *pro se* Rule 3.853 motion for DNA testing. (Doc. 7-13 at 18 to 25) Although the Respondent and Quilling exclude the period of time that this motion was pending in the state courts, his Rule 3.853 motion was not an "application for State post-conviction or other collateral review with respect to the pertinent judgment" under § 2244(d)(2), and thus, it did not toll the limitations period. *See Brown v. Sec'y, Dep't of Corr.*, 530 F.3d 1335, 1337–38 (11th Cir. 2008) (concluding that a DNA testing motion under Florida criminal rule was not an application for post-conviction or other collateral review with respect to the pertinent judgment, for purposes of AEDPA's tolling statute).[11]

Quilling filed another *pro se* postconviction motion on April 29, 2013. (Doc. 7-14 at 4 to 10) This postconviction motion did not toll his one-year limitations period because

---

[11] Although allowing for tolling of the period of time that Quilling's Rule 3.853 motion was pending in state court, the Respondent maintains that the federal petition is untimely. Quilling asserts that his Rule 3.853 motion raised an actual innocence claim and tolled his limitations period. (Doc. 11 at 6) Assuming that it constitutes a tolling motion, his federal petition is still untimely. After rehearing was denied on August 29, 2012, in the appeal of the denial of his amended postconviction motion, seven days passed until Quilling filed his Rule 3.853 motion. At that juncture, 235 days of untolled time had elapsed. After the mandate in Quilling's appeal from the Rule 3.853 denial issued on May 8, 2013 (Doc. 7-14 at 2), 130 days would have remained on his one-year limitations period and he did not have a tolling application in state court during that time. His federal habeas petition was not filed until June 11, 2014 (Doc. 1), over a year after the mandate issued in the Rule 3.853 appeal. As explained *infra*, Quilling is not entitled to tolling for his April 29, 2013, untimely postconviction motion.

such was untimely filed. The state trial court found this motion for postconviction relief to be successive and untimely (I 10; Doc. 7-14 at 13), and the Florida appellate court *per curiam* affirmed. The ruling that Quilling's postconviction motion was untimely meant that Quilling's Rule 3.850 motion was never "properly filed." Quilling argues that his postconviction motion raised statutory or judicial exceptions to Rule 3.850's two-year time limitation. (Doc. 13 at 7) However, "[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Allen v. Siebert*, 552 U.S. 3, 7 (2007) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005)). *See also Hernandez–Alberto v. Sec'y, Fla. Dep't of Corr.*, 840 F.3d 1360, 1366 (11th Cir. 2016) (*per curiam*) ("The key takeaway from *Pace* is that an untimely application was not, and could not ever have been considered, properly filed.").

The state trial court also found that Quilling's April 29, 2013, motion was successive. (Ex. I 10; 7-14 at 13) Successive state court filings constitute "properly filed" applications for tolling purposes. *Weekley v. Moore*, 244 F.3d 874, 876 (11th Cir. 2001 Even so, Quilling's postconviction motion was not "properly filed" under Section 2244(d)(2) because it was denied as untimely, and the state court's finding of its untimeliness is unambiguous. *See Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318 (11th Cir. 2006) (holding that when a state court determines that a postconviction application is untimely, yet also rejects the application on an alternative basis such as lack of merit, "the timeliness decision standing alone compels a federal court to conclude that the state motion was not 'properly filed.'" (citations omitted)m *cert. denied*, 550 U.S. 922 (2007)). *See also Ousley v. Sec'y for Dep't of Corr.*, 269 Fed. Appx. 884, 886 (11th Cir. 2008) ("Although we have held that an untimely state post-conviction motion is not

"properly filed," and does not toll the one-year federal limitations period even where, as here, the state court denied the motion on alternative grounds, we have only applied this holding in cases where the state court made an "unambiguous finding" that the petitioner's state post-conviction motion was untimely.") (citing *Sweet.*, 467 F.3d at 1318).

Quilling asserts that the Respondent did not furnish a copy of his motion for rehearing of the state trial court's denial of his postconviction motion. (Doc. 11 at 6 to 7) He provides his rehearing motion, in which he asserted that the state court overlooked case law authorizing successive postconviction motions and cited *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). (Doc. 12 at 1 to 5)  The state appellate court affirmed the ruling of the postconviction court, and Quilling's allegations in his rehearing motion before the state trial court do not alter the conclusion that his postconviction motion was not "properly filed" because it was untimely.

In short, Quilling is not entitled to statutory tolling of his limitations period during the periods of time that his Rule 3.853 motion and his untimely postconviction motion were pending. His federal habeas petition was untimely filed on June 11, 2014 (Doc. 1), more than a year after his judgment was final.

### B. Quilling does not demonstrate the applicability of § 2244(d)(1)(B).

Quilling alleges that on August 2, 2013, a correctional officer, Robert Sadusk, committed theft of his personal properly, including "years of handwritten legal research" and a handwritten draft of his habeas petition.  He claims that the officer was assisted in the "theft and destruction of much of Quilling's properly" by Sergeant James Myers. (Doc. 11 at 9)  According to his timeline, Quilling states that on August 13, 2013, Sgt. Myers returned a partial bag and a mostly empty bag of property. (Doc. 12-2 at 3)  Quilling

furnishes an informal grievance and inmate personal property list in which he listed as missing "legal work" and the amount as "Mis." (Doc. 12-2 at 5) He also provides a response that his claim that clothing and other non-food items were missing was not supported by any statement other than that of Quilling. (Doc. 12-2 at 7) Quilling also provides a subsequent grievance and determination that he would be reimbursed for the full value of all property claimed to be lost. (Doc. 12-3 at 1 to 3) In a letter to the Inspector General's Office, he claimed that the reimbursement of $200 for property for which he had receipts did not remedy the "theft" of his years of legal research and draft of his federal petition. (Doc. 12-4 at 1 to 2)

Quilling claims that the "theft" of his property was reprisal for grievances he filed about deplorable conditions in the prison law library in 2012. (Doc. 11 at 10) After he complained and named correctional officer Sadusk, Quilling asserts that his grievance was approved and referred to the Inspector General's Office. (Doc. 11 at 10; Doc. 12-5 at 1 to 3) According to Quilling, the correctional officer continued to work in the prison library and retaliated against him for filing the grievance. Quilling alleges after the officer was removed from the library post, the officer continued the retaliation, which Quilling states was documented in grievances listed in a document styled "My Journal" included in his appendix. (Doc. 11 at 10; Doc. 12-5 at 1) He contends that the alleged theft of his property occurred the day that the officer was reportedly denied a promotion in part as a result of Quilling's grievances and before the officer was suspended or took a leave of absence. (Doc. 11 at 10) Quilling asserts that when some of the property was returned, years of his research and his habeas petition were not returned. (Doc. 11 at 10) Quilling

asserts that as a direct cause of the unlawful theft of such, he was prevented by "state impediment" from filing his federal petition. (Doc. 11 at 11)

Quilling does not allege entitlement to a later start date for his one-year limitations period under Section 2244(d)(1)(B). Even if his allegations were construed to so allege, he cannot show that this alleged confiscation of his legal materials by Department personnel prevented him from completing and filing a timely federal habeas petition. He had ample time to file his federal habeas petition when the alleged impediment did not exist. Because Quilling fails to show that any State-created impediment prevented him from timely filing his federal habeas petition, he does not demonstrate that § 2244(d)(1)(B) applies to determine the date upon which his limitations period began.

### C. Quilling does not show entitlement to equitable tolling.

Based on his assertions as to the alleged theft of his legal research and draft of his habeas petition, Quilling claims that extraordinary circumstances prevented a timely filing of his federal petition. (Doc. 11 at 9) He alleges that after expiration of the deadline asserted by the Respondent, he had no pertinent legal research and no draft petition and was forced to recreate what was lost "under a dire and sometimes hostile law library legal research environment." (Doc. 11 at 11) He claims that he used diligence to duplicate his research and file the habeas petition on June 11, 2014. Doc. 11 at 11)

The one-year limitation established in Section 2244(d) is not jurisdictional and, as a consequence, "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418. Quilling

must meet both requirements, and he controls the first — due diligence — but not the second — extraordinary circumstances. The failure to meet either requirement precludes equitable tolling. "The diligence required for equitable tolling purposes is "reasonable diligence, not maximum feasible diligence,'" *Holland*, 560 U.S. at 653 (citations and quotation marks omitted), and a petitioner's "lack of diligence precludes equity's operation." *Pace*, 544 U.S. at 419. To demonstrate the "extraordinary circumstance" prong, a petitioner "must show a causal connection between the alleged extraordinary circumstances and the late filing of the petition." *San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011).

"[T]he reasonable diligence and extraordinary circumstance requirements are not blended factors; they are separate elements, both of which must be met before there can be any equitable tolling." *Cadet v. Fla. Dep't of Corr.*, --- F.3d ----, ----, 2017 WL 727547 at *7 (11th Cir. Feb. 24, 2017) (citation omitted). Quilling does not show that he exercised diligence once his judgment was final to file a timely federal habeas petition. The alleged theft or confiscation of his research and/or draft of his federal habeas petition on August 2, 2013, does not explain Quilling's delay in filing his first postconviction motion after his judgment was final or his delay in filing his Rule 3.800(a) motion. Nor does the alleged deprivation of his research or draft of his habeas petition on August 2, 2013, explain why he delayed in filing his federal petition after the August 29, 2012, denial of rehearing of the order dismissing his appeal from the denial of his amended postconviction motion. His limitations period expired before the alleged theft of legal work. Even if his Rule 3.853 motion further tolled his limitations period and that his federal deadline did not expire until after the alleged confiscation of his research and draft petition, Quilling still fails to show

that he used reasonable diligence both before and after August 2, 2013, to accomplish a timely filing. He undeniably had the state court decisions on his federal claims before and after that juncture, and his preceding delays and subsequent delay in filing his federal petition until June 11, 2014, are unreasonable.

Quilling claims that he has been confused about state court actions in issuing premature mandates and the alleged failure of the state court to issue a mandate in a postconviction appeal. (Doc. 13 at 15) His *pro se* status does not, however, excuse his failure to file a timely petition. *See Spears v. Warden*, 605 Fed. Appx. 900, 904 (11th Cir.) (per curiam) ("We have stated that *pro se* litigants, like all others, are deemed to know of the one-year statute of limitations . . . . And we have not accepted a lack of a legal education as an excuse for a failure to file in a timely fashion.") (citations and quotation marks omitted) *cert. denied sub nom. Spears v. Tatum*, 136 S. Ct. 300, 193 L. Ed. 2d 148 (2015). Quilling states that the state court record is a "testament" to him that he has used due diligence in exercising available procedures. (Doc. 11 at 11) He delayed, however, in filing applications which would toll his limitations period and in the absence of such, a federal petition before his limitations period expired.

Even if he could meet the due diligence requirement, Quilling fails to show that an extraordinary circumstance caused him to miss the deadline. Quilling does not show that lack of research and a draft of his petition was an extraordinary circumstance, and he does not show a causal connection between the alleged deprivation of his research and draft petition, or any conditions at the prison library, and his untimely federal petition. Consequently, he fails to show entitlement to equitable tolling of the limitations period, and his untimely federal habeas corpus petition is not entitled to review on the merits.

**D. Quilling has no new reliable evidence of actual innocence.**

Quilling claims that he is actually innocent of the crimes for which he stands convicted. (Doc. 11 at 11)  The Supreme Court has held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass ... to overcome the time limits imposed by [§ 2244(d)]."  *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013).  However, that showing requires the petitioner to identify new evidence demonstrating actual innocence.  133 S. Ct. at 1935.  The Supreme Court cautioned that tenable actual-innocence gateway pleas are rare [because a] "'petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995) and citing *House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is "demanding" and seldom met)).

Quilling asserts that the prosecution introduced no physical or scientific evidence at trial directly linking him to the robbery, and he claims that his trial counsel refused to introduce evidence, call witnesses, and fully cross-examine the State's witnesses to show a mistaken identity occurred. (Doc. 13 at 12)  He does not, however, identify any new evidence of actual innocence not presented at trial.

Quilling in his brief in opposition to the motion to dismiss his federal petition relies on his allegations in his amended postconviction motion, asserting that in his first ground, he raised a claim of judicial bias and alleged there were conflicts of interest on the part of his trial counsel.  He also points to his third claim asserting that the prosecutor withheld the identity of an eyewitness until closing argument.  These assertions do not raise the existence of new evidence.  Quilling asserts that in his fourth claim, he alleged that the

prosecutor and his trial counsel withheld a police evidence receipt and the fact that police found an incriminating torn $20 bill in his pocket presented at trial. According to Quilling, his counsel refused to cross-examine the detective on supposedly planting of the money. (Doc. 13 at 12) He does not, however, claim that the money was new evidence and that such was evidence of his innocence.

Quilling asserts that the prosecutors, police, and defense attorneys withheld for 22 months that they did not have the aluminum tape that was used to cover his license plate. (Doc. 13 at 12) He does not claim that the tape was evidence of his innocence. The remaining allegations which Quilling focuses on also do not bear out any evidence of his actual innocence. Quilling asserts that in his sixth ground, he claimed that the detective changed his testimony from that given at deposition to state that pictures were taken of the piece of tape but were lost. (Doc. 13 at 12) He also alleges in ground seven of his postconviction motion, he claimed that the prosecutor orchestrated a "covert" courtroom identification without notice to counsel, and in ground eight, he claimed that his counsel refused to introduce various evidence. He does not, however, claim that the evidence or identification was unknown to him at trial. (Doc. 13 at 12 to 13) Quilling relies on his ninth claim, stating he alleged that his counsel refused to challenge evidence to assist police and prosecutors in concealing that the knife used had been processed for fingerprints and DNA and that test results verified there was no match to Quilling and were suppressed. He does not assert that he has new scientific or physical evidence establishing his innocence. He asserts that in his tenth ground, he claimed that prosecution withheld from discovery for a full year that police had a suspect, concealed two additional suspects, photopacks, "ID" forms, and destroyed or suppressed reports

about all three suspects.  He does not allege that any of this evidence was unknown to him at trial and does not show that it constituted new reliable evidence of his innocence. (Doc. 13 at 13)  Not having new reliable evidence of his actual innocence not presented at trial, Quilling cannot establish entitlement to the actual innocence exception to the time limitation.

To the extent Quilling claims that his untimely filing of the federal petition is excused because of his trial counsel's alleged ineffectiveness (Doc. 13 at 10) based on the holding in *Martinez v. Ryan*, his reliance on *Martinez* is misplaced.  The *Martinez* rule explicitly relates to excusing a procedural default of ineffective-trial-counsel claims and does not apply to AEDPA's statute of limitations or the tolling of that period.  *Arthur v. Thomas*, 739 F.3d 611, 630 (11th Cir. 2014).

Quilling's petition is untimely under Section 2244(d)(1)(A), he fails to prove entitlement to equitable tolling or the actual innocence exception, and he has not shown an adequate reason why the dictates of the one-year limitation period should not be imposed upon him.  Accordingly, he is not entitled to federal review.

## IV. CONCLUSION

Accordingly, Quilling's petition for the writ of habeas corpus is **DISMISSED** as untimely.  The Clerk is directed to enter a judgment against Quilling and to **CLOSE** this case.

## DENIAL OF A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

**IT IS FURTHER ORDERED** that Quilling is not entitled to a certificate of appealability ("COA").  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).

Rather, a district court must first issue a COA.  Section 2253(c)(2) limits the issuing of a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a certificate of appealability, Quilling must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Quilling is not entitled to a certificate of appealability, and he is not entitled to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Quilling must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on May 11, 2017.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:
Counsel of Record